Case number 23-5200, Sigma Corporation v. Island Industries, Inc. et al. Argument not to exceed 15 minutes per side. Mr. Kampfner, you may proceed for the appellant. Thank you. Your Honors, Roberto Kampfner, White, in case for appellant, Sigma Corporation. I'd like to reserve two minutes for rebuttal. All right. Your Honors, this appeal involves an appeal from a district court order dismissing an adversary proceeding filed by my client against Island Industries and its principal, Mr. Sanders. There are two issues on appeal. Number one is whether the district court erred in finding that Sigma did not take reasonable measures to protect its trade secrets. And the second issue is whether the district court erred in finding that Sigma was seeking impermissible indemnification for a false claims act liability. We believe that the district court erred in both of these issues. Just very briefly, as this court knows, the district court order is subject to de novo review. This is a 12B6 motion, so the claim will survive if it is plausible. And the court must construe the complaint in the light most favorable to the plaintiff, accepting all allegations as true and drawing reasonable inferences in favor of the plaintiff. With respect to the reasonable measures issue, the district court found in its opinion that Sigma failed to take reasonable measures to protect its trade secrets. We believe this was an error. This court in Niemey v. NHK Spring Company, 543 F3rd 294-303, found, quote, that except where the evidentiary showing of reasonable efforts could not conceivably support a judgment in favor of plaintiff. The reasonableness of the efforts is a question of fact. So it's not suitable for determination. The district court treated it as a pleadings issue, the insufficiency of your allegations. Correct. Am I correct about that? That's right. And that's a little bit different from an analytical, well, it is different from an analytical situation in which the district court was weighing the evidence, correct? Well, except it weighed the evidence by looking at the evidence, analyzing it and finding that it was not, as a matter of law, reasonable. But it was the allegations it was looking to, correct, or not? It was looking to the allegations, but, again, it was determining that those allegations were reasonable. And I believe that that is not reasonable, sorry. Insufficient.  But that's not a weighing of evidence. That's a looking at the legal sufficiency of your allegations. It's not looking at the evidence. It's weighing legal sufficiency of allegations, not evidence, right? You never got to the point of presenting evidence. That's right. That's right. We never got to that point. There are other cases where courts have refused to dismiss on 12b-6, on a 12b-6 motion, where the question was determining reasonableness. There was Lyon LLC v. Vertiv Group Corp., which was a northern district of Illinois decision. There the court found that it was unfit to decide the question of whether reasonable measures had been taken at the pleading stage. In Blue Yonder v. Canaxis, which is a district court case out of Texas, the court also found that it was not suitable to make reasonableness determinations at the motion-to-dismiss stage. And Blue Yonder was an interesting case because it involved a source code that had been publicly put on the Internet for a period of time. And the defendant argued that that meant it was publicly available. The court said, well, it was only there for a short period of time, and it was difficult to locate place on the Internet. So as a result of all of that, it's something that the jury has to consider, FactFinder has to consider. And I think here we did plead enough facts to survive a motion to dismiss, and let me explain what those facts are. We allege in our complaint that SGMA spent a significant amount of time and money developing the information and the relationship with suppliers. That's at Record Entry 785. How is that an indication of concealing that from anybody else's view or review? Well, I was setting the groundwork. I can certainly go to the other allegations. So those allegations would be, you know, one, we allege that SGMA's business, one of SGMA's businesses is entirely dedicated to sourcing overseas products, and that the suppliers are not commonly known, and that SGMA has expended significant amounts of time developing its relationships with these suppliers. I think these facts together create a reasonable inference that SGMA would have used reasonable measures to protect its information. But you didn't plead any reasonable measures. Well, no, we did. We said that Mr. Paquette was an employee of a management-level employee of SGMA, that he had access to this information as part of doing his job, that he did not otherwise, that he did not have access to other information that was not part of doing his job, and that he had a duty under New Jersey law not to disclose that information, you know, that confidential information to any other person. So I think that those facts put together at the 12B6 stage of a case are sufficient to survive a motion to dismiss. Importantly, you know, I think the allegation that Mr. Paquette didn't have access to information, he didn't need to do his job, is an important allegation. It shows that one is at record entry 788. It shows that the information wasn't just freely available within the company. Is it accurate to characterize what the district court said as, you know, certainly SGMA labeled information confidential, but is it wrong to say that what the district court was looking for was factual allegations about what steps SGMA took to protect that information and keep it confidential, that you didn't go beyond labeling it confidential? Is that an accurate characterization? No, I don't believe it is. I don't believe it is. So look, I think what you're referring to, Your Honor, is the disclosure in the litigation, the False Claims Act litigation, and the district court finding that we didn't do enough there because we didn't move for a protective order. We believe that the district court just misunderstood what was going on. In that case, a protective order had already been entered, and that protective order was breached when the defendants disclosed the supplier list that they had stolen to the other defendants in that case, which are all SGMA's competitors. So that protective order, there was a protective order in place which was violated. So it wouldn't have made any sense for us to get a second protective order when the protective order was already violated. And we did demand, we did demand numerous times that they take those, that they recall that information and mark it confidential, and they never did. They refused to do it. Now, the fact that we didn't seek sanctions or that we didn't seek a separate protective order, I think that's a classic weighing of facts, right, to determine whether or not there was enough there for us. Counsel, you know, it's one thing to say that others did not have access to the secrets and say that that constitutes taking reasonable measures to keep things confidential. It's another thing to say that others didn't have access to these secrets because your client took the following measures to maintain secrecy or to ensure the secrecy. And those measures are A, B, and C, specifying what they were. And I guess the problem here is your client, in the pleadings, didn't specify what measures specifically that it took. What would you say about that? Well, I think we did identify the measures. The measures we took was that were that employees had access to information only to the extent they needed it to do their jobs, and we relied on the duty under New Jersey law, fiduciary duty under New Jersey law, not to disclose confidential information. You know, again, at the motion to dismiss stage, that should be sufficient to survive a motion to dismiss. And that's with respect to while it was within SGMA. When we got to the district court litigation, again, there was a protective order in place. We did demand that the information be retracted and marked as confidential. And the other fact that I – the other argument that I want to make here is the courts have been pretty clear that if you misappropriate trade secrets and then disclose them, you cannot use the fact that they were publicly available as a reason to not be liable, right? You cannot baptize your liability by essentially disclosing the information yourself, which is what happened here, right? I mean, the defendants disclosed this information in the False Claims Act during discovery, and by doing that, they are the ones that published it. So they cannot get an advantage from doing that and say that somehow these things are public because they disclosed them. With respect to the second issue regarding – Before you go ahead, do you have a case that you can cite that's factually similar to this situation that you would want to rely upon? Well, we cited several in our briefs. In Phoenix Process Equipment, and the site, unfortunately, I don't have it in my notes, there the court found – it's a District of Arizona case – there the court found that limiting employee access to information was sufficient to survive a motion to dismiss. There's transradial solutions, where the court found that providing information to employees on a need-to-know basis was sufficient to survive a motion to dismiss. And HTS, Inc., which also had that same point. So we think that those cases show that a 12B6 – again, at a 12B6 stage, that there's sufficiently applied information here to survive. Thank you. With respect to the second issue of whether this is an indemnification, a secret indemnification, or backdoor indemnification, we again believe that the district court erred as well. And first, the first point here is that the ruling by the district court is premature. The judgment on the False Claims Act is on appeal at the Ninth Circuit. It has currently stayed pending a resolution of an appeal in the federal circuit to determine whether these joints actually were subject to anti-dumping duties. So to dismiss a case based on a liability that's not final, that's subject to reversal, is premature. Second, the mortgages case that the district court relied on is a very narrow case. There, the Ninth Circuit said that co-conspirators cannot seek indemnification or contribution from a relator as a matter of law. And it said it for two reasons. Number one, Congress did not provide for indemnification in the False Claims Act statute. And number two, that there was no reason to create federal common law to provide that right. And the reasoning that the court had was if you have the people are joint in several, if people are joint in several for liability under the False Claims Act, they're not entitled to go after each other to ameliorate liability. That is not the case here. Here we are seeking redress under the Defense of Trade Secrets Act. It's a separate federal law that provides for liability. And there is no indication that Congress in any way sought to limit the applicability of that statute or somehow put the False Claims Act above that statute. And that's, I think, a critical component here. Essentially what this court has to do is weigh, I mean, there are two separate federal statutes. They're both applicable. There's independent liability. That liability for trade secret theft is not related to the supposed scheme under the False Claims Act. They are completely separate facts. Under those circumstances, there is no basis for this court to essentially subordinate the liability under the Defense of Trade Secrets Act to the False Claims Act. And I think my time is done. Does it matter whether the issue is being raised by way of compulsory counterclaim or alternatively it's being raised in some other context? Your Honor, I think it's important in the sense that if you're raising it as a compulsory counterclaim and you are somehow seeking to reduce the liability of the judgment that may be forthcoming as a result of the False Claims Act, it might be more likely to be barred, essentially. This is a completely independent cause of action that does not have anything to do with the False Claims Act liability. This has to do with the fact that this defendant stole Sigma's trade secrets. And the Defense of Trade Secrets Act allows you to get compensated for any actual damage resulting from that theft. There is no need to go to any indemnification or contribution-type situation or for no basis for this Court to limit the liability under the Defense of Trade Secrets Act. Thank you. Good afternoon. May it please the Court. Mitchell Hendy on behalf of Island Industries and Mr. Glenn Sanders. The threshold issue in this appeal is whether Sigma adequately pleaded the existence of a trade secret in the first instance. And under all three statutes under which Sigma is proceeding, that requires two things. One, that the information derives economic value by virtue of its secrecy. And two, that Sigma took reasonable measures or made reasonable efforts to keep it secret. Now Judge McCullough looked at this complaint and applied the familiar Twombly-Iqbal standards and said, no. At page 825, Judge McCullough said, Sigma, quote, does not point to a single measure it took to protect its allegedly secret supplier list. Nothing in that statement says Sigma didn't, say, allege enough or that Sigma didn't allege reasonable efforts to keep it secret. It's that Sigma didn't allege any efforts whatsoever. And that's correct, based on looking at the complaint. The things my friend points up today, first, Sigma took lots of efforts to develop the information. As your Honor mentioned, that doesn't say anything about what the company did to keep it secret once it was acquired. Second, Sigma likes to invoke New Jersey's fiduciary duties. But that is a step that the state provides to protect sensitive business information. That's not a step that a company takes to keep the information secret in the first instance. And third, there's all these allegations about Mr. Paquette and his position at Sigma. And the fact is, the complaint doesn't allege anything about Sigma requiring Mr. Paquette to keep information secret. My colleague likes to make the point now that Sigma had this policy of a need-to-know basis. But that's not in the complaint. If Sigma made this individual, made his fiduciary duties, would that be a step in protecting this information under New Jersey's law? I'm not sure I understand. What do you mean, Sigma? It's probably poorly phrased on my part, but you're pointing out that to say that there's a fiduciary duty here, that's a state law matter, and it's nothing that Sigma may have actually done. But what if Sigma said, as of this individual, a particular individual who they're saying he couldn't disclose any of this because it was part of his job, but he's a fiduciary, if they put him in a fiduciary position, does that strengthen their claim? I think that would look like a nondisclosure agreement, or some sort of actual agreement that Sigma asks its employees to sign, to keep information it learns in the course of employment secret. That could incorporate that fiduciary standard, but the point is, the complaint doesn't allege anything to that effect. And the cases that my colleague relies on, that were just brought up just a moment ago, like the Miami case, all these cases had complaints that had allegations of steps that the plaintiff took to keep the information secret. So in Miami, that information was physically secured in a locked room, and there were allegations that there were confidentiality agreements, whether oral or written, and the same is true in the other cases, the Blue Yonder case, this URL and the internet information. There the plaintiff alleged that it actually took active measures to suppress that URL, and it took steps to make sure that that was not widely disseminated. None of that is present in this complaint, and that's a critical difference, and that Judge McCullough correctly decided those are not the same, that this complaint doesn't say anything about what Sigma did. I'm happy to address any other questions that the panel has, but I think the bottom line is here, Judge McCullough looked at this complaint, applied the straightforward, well-established pleading standards, and found that the complaint just came up short. And for those reasons, Island and Mr. Sanders respectfully request that the court affirm the district court decision and allow this retaliatory lawsuit to come to an end. Thank you. So if we agree with your argument, then we don't get to the indemnification issues, is that the way this goes? Yes, Your Honor. If there is no trade secret that's adequately alleged, I don't think there's anything left for the court to decide. All right. Thank you, Your Honor. Thank you very much. Thank you, Your Honor. So a couple of things. Again, not to reiterate things, but, you know, I think that a court's decision, a company may reasonably rely on a fiduciary duty to say that an employee who has information because they need to know it isn't going to disclose it to a competitor. And the fact is that we do plead that that information was restricted, that the employee had information because of his position, and didn't have access to other information that was confidential. You know, it almost sounds like instead of restricting the information, what you say amounts to a restriction actually is you're saying that the information was secret, that the information was confidential, and your client wasn't really specifically identifying the measures that it took to safeguard the information. Well, I think it's two faces of the same coin, right? I mean, if you take information and you don't let your employees see it as a general matter and you restrict it to people that need to know it and you restrict it and you rely on senior people keeping their confidentiality. Well, wouldn't you then have to say what your client did in order to restrict the information from being seen or disseminated and the argument your opposing counsel would argue that that's what your client did not do? Well, Your Honor, I would like to point out that this is a 12B6 motion. This is a motion to dismiss. For example, in NAMI there were all kinds of other allegations. Well, that's because it had gotten past that stage and there had been significant discovery, right? And here I think, you know, again, just pleading that this was important information, that we'd spent a lot of time developing it, that it was our business to keep this confidential, that we had, you know, that employees did not have general access to this information is enough to get over this low bar. All right. Thank you, Your Honor.  Appreciate your time. Thank you for your arguments. The case is submitted.